Case number 233423, Pierre Investments Inc. et al. v. Anspach Meeks Ellenberger LLP et al. Argument not to exceed 15 minutes per side. Mr. Allen, you may proceed for the appellant. May I please the court? My name is Eric Allen. I represent the appellant in this case. I think the court is aware of the procedural history of this case and the facts of the case. I think the interest here is mostly with standing and privity. Would that be accurate? Why do you care? If you have Pierre, why do you care about the others? That's a good question. I was kind of thinking about that on the way down here. I think Pierre and Ghazian and Gearhart are the same person. So whether or not Pierre or Ghazian or Gearhart signed the contract with the attorney, I think if it's the same person, I'm not sure if that really matters. Why are you fighting about it? Pierre is clearly a relevant party. Well, I think that at the end of the day, it's really all the same person. I think it's a distinction without a difference. However, in the state courts have found that the privity between the officer, shareholder, and the person that they make a contract with, there's no privity. So I think one out of three isn't bad here in that Pierre... The recovery is the same. Everything is the same. Right. Do we apply the case within a case standard or the sum evidence standard? What are you arguing for? I would argue that probably the sum evidence standard. I think in either case... Can you argue that you would win below but for? It seemed to me you said that you would win the merits of the underlying litigation. That sounds like case within a case. Yeah. I think your question sounds like I would be more likely to win if it was the sum evidence. So that's why I chose that one. But I think either way you look at it, I think the errors made on behalf of the appellees left Pierre, or Gazian, or Gerhard, whoever you want to have as the plaintiff, unable to be victorious in the trial court. Well, wouldn't you have to show that but for the malpractice you allege, there was something for you to recover at the end of this litigation, and it's not clear to me that there's any reasonable chance that you would have succeeded in doing that no matter what the law firm did. Yes. I think you're talking about the fact that CLS was a defunct company. Yes. They had no corporate structure or anything like that. I mean, there's got to be something you were deprived of. That is correct. I think that I wasn't trial counsel, as I'm usually not, and here we're saying trial counsel was... Can you keep your voice up, please? I'm sorry. I'm just having a lot of trouble hearing you. Okay. I think that the failure to investigate those things would have led the lawyers to do things differently. Well, but don't you have to show that this is what they would have investigated had they found out? Don't you have to make some allegations about the path to success? Yes. I mean, I think in the complaint and in our brief we did that. Like tell me exactly where I'd find that. Well, I think we laid out the elements for professional negligence. I'm not really talking about the elements of your claim. I'm talking about what if they did everything the way you now say you wanted them to do it? What was going to be the result at the end of this lawsuit? Well, I think that one of the issues that got confused, and I think the district court did a good job of discussing this, was piercing the corporate veil. That's a remedy. And once you pierce the corporate veil, where's the avenue? Who's got the money here? Well, I think if you look at- You've got to have some loss, some damage as a result of their conduct. You have to have some pockets too, right? You have to have somebody that's able to- You've got to answer Joe Gibbons' preliminary question before you get to the second question. I think that had they been able to pierce the corporate veil, then they could go after Mr. Bali individually. Do we know that he has any resources? I believe that he does. Excuse me, what corporate veil? There was no corporation. That's yet another point.  So- I mean, there was potential liability against him as the fraudster. Yes, yes. I think that would have also been the better way to do it. Again, as appellate attorney, I don't draft the complaint. So let me ask you a related question. It seems to me you had two remedies, and I agree with Judge Gibbons. The case has not been litigated well, but when the articles of incorporation are canceled under Ohio law, officers who carry on, and I'm quoting, new business do so as individuals. They lose the protection of the Corporation Act and are personally responsible for allegations. So it seems to me if litigated well, you could opt for one of two options. You could opt for to pursue under the contract and hold you Bali liable under Ohio law, or you could void the contract and hold you Bali liable for fraud. I like either of those. I understand that, but I mean, what are you trying to do? That's what we're struggling with. Well, I think that at this point, I'm not sure if this was the panel on the 5th, 3rd. Mr. Ghazian had sued the bank for depositing the check, which I don't think was. I don't believe I've had any prior involvement in litigation related to this, although one is never sure if enough time has passed. Just to answer my question, we don't care about previous cases. Are you trying to get sued and hold you Bali accountable under the contract, or are you trying to hold him accountable for fraud? And if so, how would your lawyers have done better and won? I think it would be probably the more prudent avenue to, and I don't believe we argued this in the brief, but I'm answering your question. I think it would be a more prudent cause of action to go after him for fraud, because this is, I think, a pretty clear-cut case of fraud. All these other ancillary things, I think it's window dressing. Just so we understand, what you're arguing is ANSBAC, which is the law firm, committed malpractice, and they should have recognized that they could pursue him for fraud, and had they done so, they would have won. Yes. I think I have three minutes left. If there are no other questions, I'll let the appellees present their argument. Thank you. May it please the Court. My name is Taylor Knight, and I represent the appellees in this matter. I'm going to try and address some of the questions that you folks asked to appellant before I get started here. And I think one of the issues, just to start kind of at the end and work backwards, is this contract versus fraud versus Ubali. I think the district court appropriately addressed this and indicated that the LCA, which is the contract between Pierre Investments, is a conditional loan commitment agreement, so it doesn't guarantee that there's ever going to be a loan. And the trial court went through what it called the litigated versus unlitigated claims in this. Sure, but I get what the state court did. I get all that. But at the end of the day, if Ubali signed the contract on behalf of a defunct corporation, then you agree he could be personally held liable under the contract, correct? Whether or not they could meet the conditions precedent. Yes. And if he affirmatively misled them, he could be liable for fraud under Ohio law, correct? I think there is the potential to assert that claim, but I think it was addressed by the district court in their decision, wherein they said that the reason that a claim against Ubali for fraud would not be viable is because he had no duty to represent. He had no what? He had no duty to make a representation in this case. But there's a distinction, and the Ohio, isn't it correct that affirmatively misleading someone is different than not disclosing information? I think that it can be in certain circumstances for sure, but I think we need to take a step back and recognize that this is not an individual off the street who's engaging in this extensive business transaction. Pierre Investments was represented by its own attorney, Walter Musgrove, who's engaging in these discussions. No, I get that, but you're signing on behalf of a defunct corporation. You know it's defunct, so you're affirmatively misleading the other side. Sure, I understand that. And then you are liable for fraud under Ohio law. I think the distinction, though, is that it is an arms-length transaction, and this was the distinction. No, that's for not disclosing information. Separate the two. I get it. Arms-length transaction. Both have attorneys. You have no obligation to disclose information, but you do have an obligation not to affirmatively mislead someone. Otherwise, we're getting rid of fraud. And so if you affirmatively mislead someone, that's completely different. And so you can say all you want about Blond and everything. Those are all disclosing information in an arms-length transaction. But when you're affirmatively misleading, it takes it out of that land. I don't think it does in this type of a transaction, and I say that because— Do you have a case that says that? I don't. But you can represent that you are a loaning institution out of whole cloth, and the other party doesn't have any recourse? I think in this transaction, that is correct, because I do think we need to look at it. It is a transaction between two sophisticated business entities that are represented by attorneys. So if you have a sophisticated business entity, the other entity can commit fraud on them without recourse? I'm not viewing it as fraud, I guess, I think, is the difference between what I think I'm trying to argue versus— Did the corporation exist or not? It didn't exist. And I think what I'm saying is two sophisticated business entities is we have an attorney on behalf of Pierre Investments that's able to do due diligence to look into this information. I get that. They probably have a malpractice case against him as well. But my point is, no matter the transaction, no matter how sophisticated, people go to jail, go pay attention to the Southern District of New York. You can't affirmatively mislead, right? And if you're saying I am signing on behalf of a corporation as its president and CEO, and that corporation is defunct, you are affirmatively misleading. That's correct. Okay. I agree with that. So does that apply in this situation? I think that it sort of goes back to, I guess, the initial question that you folks had asked is, is Ubali even collectible, which is something that gets to the four elements, I think appellants have identified. There's three elements of a malpractice claim. There's four. And damages is one of the other ones. And I had written down to answer one of your questions. I'm not sure who it came from. I apologize. But there are no allegations in the complaint that any of these individuals that were not named, claims that were not made, I think it's Napier, Odom, and Ubali, were actually collectible as officers or directors or whoever they were involved in these entities. I'm sorry. Go ahead. It would seem to me that the most obvious way to draft a complaint would be sort of to tell what would have happened to you had it not been for the malpractice, the alleged malpractice. And I'm not sure this complaint tells us what the outcome would be in terms of damage. I mean, I think that Judge Tapar is undoubtedly theoretically correct. I'm just not sure that you tell us how this complaint renders him wrong. Sure. If it does. Right. And I think that's where I was hopefully going with it. Maybe not in the right words. We'll try not to interrupt you. That's okay. It's not my fault. I know it is. That's okay. I've got three kids, so I get interrupted all day long. So it doesn't say in the complaint. And I think this kind of gets us back to the piercing analysis. I know the district court recognized and we argued that piercing is a remedy, but I do think you need to have that information in the complaint, particularly in this case because it is a judgment on the pleadings and an amended complaint that I had 15 attachments to it. And they acknowledge in the complaint that CLS was a defunct corporation and they include the attachments to the complaint that show that it's a defunct corporation and it's not collectible. So that's very clear. And regardless of whether piercing is an actual claim or a remedy that they're going to later, I do agree with the court that it needs to be identified in the complaint that there is in fact a remedy because damage is the fourth element of a legal malpractice. Is it what? I'm sorry. Even if piercing is a remedy, it needs to be information related to a piercing corporate bail claim, if that's where you're going with it, needs to be in the complaint. Because what we have in the complaint is a claim for damages against a defunct entity, and there's no indication that any of the individuals that are alleged as officers or directors are actually collectible. So assuming that they won, assuming that they can pierce the corporate bail. Which complaint are we talking about? I'm very confused now. The complaint in this case. Not ANSFAC's complaint. Nope. CLS. Yes. The complaint in this case. Yes, the complaint in this case. So what, I'm sorry, so what bail is the plaintiff asking to pierce? So my understanding is he wants to pierce the corporate bail of CLS, and he is claiming that Ubali, Odom, and Napier, three individuals that he's identified in the complaint. Well, he's saying he may have wanted to do that in the earlier case, but he's saying that your clients were negligent for not doing all of that, isn't he? He is, but what he didn't say is that if we had done that, he could have collected damages from those individuals. Well, let's look at that. Fraud is not dischargeable in bankruptcy, right? So, sure, at a trial he would have to show what he might have been able to collect, but we're not at the trial stage. I mean, isn't it enough to say that he could have collected from him personally because it was a defunct corporation and he's personally liable? And because there's fraud. I don't think the allegations in the amended complaint say that. That's what I'm saying, I think, is the missing piece, is plaintiff has alleged through, I think, 100-plus allegations in his amended complaint in this case, a variety of failures that he alleges on behalf of my clients. What about this? And I know, to be fair to you, this might not be argued, but in paragraph 94 of the complaint, I'm going to read it to you. Good, because I don't have it. In addition to damages suffered in the case, Pierre incurred $45,000 in unexpected and unforeseen legal expenses due to hiring two new attorneys for the bench trial, because Anspach pulled out, right? Under the some evidence, that's the caveat. I get it. It's not clear to me what he's arguing. But under the some evidence, why wouldn't that be enough? Well, I guess my question to you, and I don't know that I can do that, but my question is, I don't know that there's an allegation that there was some breach of duty by Anspach Law for declining to continue to represent Pierre moving forward, and I don't know that we have the information to explain why the attorney-client relationship broke down. I know that it did, and I know Anspach left, but if we're looking purely at the allegations of the complaint, I don't know that we have the background facts to say that that was a negligent act or a breach of duty by Anspach to decline to continue to represent its client that close to trial. Do we know anything about the circumstances of the withdrawal or the reasons for the withdrawal or whether it was committed by the court or not? We do not from the allegations in the complaint. We do know that the allegation says they failed to prepare, did nothing, that they withdrew without prior notification of the plaintiffs, and that's what it says, right? I'm just reading from it. And that the plaintiffs had been asking if their interests were being served, right? And then they list all the things they allegedly didn't do that they should have done. Right. I just think there's not enough information based on the way that it's alleged for us to really understand why the attorney-client relationship broke down. Undoubtedly it did, and they pulled out right before trial. We also don't have any information as to whether the new lawyers asked the court for a continuance or really what they had to do to get themselves up to speed or any of those things. Because that's the kind of thing you learn in discovery. There are, absolutely. But I think the important piece, if you look at the trial court's decision, as it went through the litigated and unlitigated claims as it classified them through the allegations in the complaint in detail, what the district court determined was that there was no actual evidence or facts that could have been determined through discovery that would have changed the outcome of any of the claims. Because they were dismissed for purely legal reasons as invalid claims under Ohio law. I'm sorry. How was the fact, how is not knowing before trial that this company is defunct, how does that not affect things? And how can there be no claim, no potential claim? I mean, if the company doesn't exist and the judge says you can't get damages against a company that doesn't exist, how is that not a crucial fact? And if you knew it didn't exist, then you would have sued the person personally and gone about things a completely different way. I don't understand how that isn't just clear malpractice that clearly had consequences. I don't think there's an allegation in the complaint that Anspach never figured out that CLS was a defunct company, unless they missed it, and there's a lot of them, so I may have missed it. But I don't think that they have ever alleged that. But wouldn't they have substituted Ubali then? I think he was a defendant, honestly, initially. I don't know that the claims were all asserted against him, but I virtually... But didn't they say he was a defendant? But I thought the judge dismissed him because it was a contract with the company. Give me just a second. Right. And I thought there were counterclaims by CLS that if you know it's defunct, they can't file. It's an easy way to get them dismissed rather than to litigate it, which... So you're saying... I'm sorry, I don't understand that question. CLS defunct, if the attorneys know it and they file counterclaims, you just move to dismiss them because they're not entitled to, right? And then you don't lose Ubali. But Ubali was dismissed. Judge White's right. He was. Yeah, I'm not sure about their litigation strategy. I'm not sure. I think what it really comes down to, though, is there's a whole host of failures. And more importantly, sort of piggybacking off of the argument previously, is the district court dismissed this case based on lack of proximate cause in the complaint. And as you've seen from reading the appellant's brief, they didn't address the dismissal of this case based on lack of proximate cause. It's entirely missing. They didn't challenge any aspect of that at all in their briefing. And I'm going to be honest, this is the first time I've ever experienced that, that the brief from the appellant didn't actually address the reason that the case was dismissed by the trial court. They spent their entire time going through the standing analysis, which I'm not going to go through because I think it's very clear and simple, also the damage analysis, which I think we've talked about a lot here today. So based on all of that, I see my time is almost up. So I would thank you and ask that you affirm the trial court's decision. Thank you. What about that last point? Which point? About proximate cause and not addressing it. Do you? I think we talk about it in the damages portion. Proximate cause as their failure to do something is the proximate cause of the damages to Pierre. Is that what you mean? I'm sorry, what? The proximate cause of the damages is the malpractice of the attorneys. I certainly think that the not looking at, one, whether or not, I mean, I could have on my phone during the last argument looked up whether or not CLS was a corporation. It would take literally five minutes to find out in the state of Ohio or in the state of Delaware if this was an okay corporation. They did ask someone who gave them some assurances, but I can't remember who that was. That would have been Musgrove talking with the first attorneys. I mean, there are, yeah, I mean, you can get weighted down with all the facts in this case, unfortunately. But I think that it kind of boils down to this, that this person is holding themselves out as a lender, as a bank, and that they have enough capital to lend and are fishing for individuals online. And in reality, the corporation is defunct. There are no officers. There are no shareholders. They have no money to lend. They've got another attorney to say that, oh, yeah, we've done plenty of these loans with CLS, which that cannot possibly be true. So them holding themselves out and misleading Mr. Ghazi and Pierre Investments, I think, is sort of at the heart of this case. Can you clarify for me the status of Mr. Yuvali in litigation against CLS? I believe he's been dismissed in all of the ‑‑ I don't believe he's a litigant any longer in any of the litigation, because there was the state court litigation and there's this federal court litigation, which named him each time. And do you know in which of the cases he was named as a defendant? He was in the state court. I believe he was in the first round of ‑‑ I think he's always been named as a defendant, but he is sort of brushed aside by the district court. So I don't think he has to answer for anything except for in the state court. My recollection ‑‑ If you could answer whether a fraud claim was asserted against him in this case, what would your answer to that question be? I would say no. I don't believe that the complaint ‑‑ I think it's mentioned as part of the malpractice. Certainly part of the amended complaint where they talk about they should have looked into whether or not this was a defunct corporation and who had the pockets. I mean, that's ‑‑ At this point, Pierre is clearly not trying to recover money from Yuvali. It's trying to recover money from the law firm. Is that a true statement or not? That's correct. Yeah, this is ‑‑ as the district court judge, the only claim here is against the lawyers. There's no ‑‑ you know, I can't change that. So assuming that what Judge Sipar said about piercing the veil and the fraud claim, assuming that's right, and I would think it is, this is not the venue in which we could address that. Is that right or not? I don't know at this point. I mean, I would have to look back. Yeah, I can't answer that with any measure of confidence. I would say, you know, this is really ‑‑ this is a professional negligence case because the parties are in diverse jurisdictions. That's the only reason why we're here. But in terms of a fraud claim against him specifically, no. Whether or not that would be the better way to go, I'm not sure. All right. Thank you for both of your arguments.  We'll consider the case carefully.